**O**
**JS-6**

# United States District Court
# Central District of California

| | |
|---|---|
| FABRIC SELECTION, INC., a California corporation,<br><br>                Plaintiff,<br><br>    v.<br><br>MANJEET INTERNATIONAL, INC., a New York corporation; UNION APPAREL GROUP, LTD., a New York corporation; and DOES 1 through 10, Inclusive,<br><br>                Defendants. | Case No. 2:17-cv-02353-ODW (KS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [33]** |

## I. INTRODUCTION

Plaintiff Fabric Selection, Inc. ("Fabric Selection") brought suit against Defendants Manjeet International, Inc. ("Manjeet") and Union Apparel Group, Ltd. ("Union") for fabric design copyright infringement. Fabric Selection and Union reached a settlement, and the Court dismissed Union from the case. (ECF No. 36.) Fabric Selection now moves for default judgment against Manjeet. (ECF No. 33.) For the following reasons, the Court **GRANTS** the Motion, and awards Fabric Selection

$750.00 in statutory damages. The Court **DENIES** Fabric Selection's request for costs and attorneys' fees.[1]

## II. BACKGROUND

**A. Factual Background**

Fabric Selection is a Los Angeles-based fabric designer. (Compl. ¶ 1, ECF No. 1.) Manjeet is a New York corporation that manufactures apparel products in India and sells its products to wholesale distributors. (*Id.* ¶ 2; Decl. of Sean Javaheri ("Javaheri Decl.") ¶ 5, ECF No. 33-1.) Union is a wholesale apparel distributor. (Javaheri Decl. ¶ 6.) Union purchases fabric and fabric designs from suppliers such as Fabric Selection and contracts with manufacturers such as Manjeet who make the garments and ship them to Union for retail distribution. (*Id.*)

In or around December 2015, Union purchased several thousand yards of fabric from Fabric Selection. (Javaheri Decl. ¶ 7.) This fabric bore the design that is the subject of this action ("Subject Design"). (*Id.*)

On March 30, 2016, Union received from Manjeet a shipment of 2,004 skirts containing the Subject Design. (Decl. of Stacy Knox ("Knox Decl.") Ex. B at 8, Ex. A at 31, ECF No. 33-2.) At least some, possibly all, of these skirts violated Fabric Selection's copyright in the Subject Design. (Knox Decl. ¶¶ 2–3.) It's not clear from the record who caused the infringing skirts to be manufactured. Each of the parties in this action has a slightly different take on the matter.

*1. Fabric Selection's Version of Events*

Sometime in 2016, Fabric Selection discovered goods that infringed its copyright that had been "distributed" by Union. (Knox Decl. ¶ 29.) The record is silent as to how Fabric Selection made this discovery and as to how much infringing product it discovered.

---

[1] After carefully considering the papers filed in support of the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

In its Complaint, Fabric Selection does little to distinguish the two Defendants in this action, and seems to indicate that Manjeet and Union are part of a distribution chain that produced infringing goods. (*See* Order Denying Motion for Default Judgment 4, ECF No. 23; Compl. ¶¶ 3–4.) During discovery, Union produced a Purchase Order, a Packing List, and an Invoice reflecting its acquisition of the skirts from Manjeet. (Knox Decl. Ex. A at 31–33.) Fabric Selection asserts that these documents show that "Manjeet was paid for its infringing conduct." (Mot. 12, ECF No. 33.)

### 2. *Union's Version of Events*

During Fabric Selection's factual investigation, a Union officer represented to counsel for Fabric Selection that Union had received "additional, unauthorized" skirts from Manjeet. (Knox Decl. ¶ 3.)

During discovery, Fabric Selection submitted Interrogatories and Requests for Admission to Union. (*Id.* ¶ 8.) Union's responses to these discovery requests contain four assertions relevant to the resolution of this Motion. (*Id.* Ex. B at 36–41.) First, Union asserts that it "obtained the [Subject] DESIGN on or about March 30, 2016, when the garments bearing it arrived at [Union's] warehouse from defendant MANJEET . . . ." (*Id.* at 38.) Second, Union claims that it "did not purchase any SUBJECT PRODUCT." (*Id.*) Third, Union states that "the SUBJECT PRODUCT arrived at [Union's] warehouse without [Union's] prior knowledge that the SUBJECT PRODUCT was ever ordered or shipped to [Union]." (*Id.* at 41.) Finally, Union informed Fabric Selection that Union had "not sold any units of SUBJECT PRODUCT" and that Union had "2,004 units of Subject Product in its possession, custody, or control." (*Id.* at 39, 40.)

### 3. *Manjeet's Version of Events*

Counsel for Fabric Selection declares that at some point a Manjeet officer stated that Manjeet manufactured and shipped the skirts to Union's facility "at Union's request." (Knox Decl. ¶ 4.)

**B. Procedural background**

On March 27, 2017, Fabric Selection filed a Complaint alleging copyright infringement and contributory copyright infringement against Defendants Union and Manjeet. (Compl. ¶¶ 11–30.) Union answered, denying all of Fabric Selection's substantive allegations and raising a host of affirmative defenses. (ECF No. 18.) Manjeet, for its part, failed to appear, and the Clerk entered default against it on May 1, 2017. (ECF No. 15.) Fabric Selection then moved for default judgment against Manjeet, but the Court denied the motion because Union was still a defendant in the case. (ECF Nos. 17, 23.)

Fabric Selection and Union moved forward with settlement negotiations, and on December 21, 2017, Fabric Selection notified the Court that it had reached a settlement with Union. (ECF No. 35.) Two weeks later, Fabric Selection petitioned this Court to enter default judgment against Manjeet, who at that point still had not appeared in this action. (ECF No. 33.)

In late January 2018, Manjeet's principal officer Sudeep Kaur submitted a declaration on Manjeet's behalf in response to Fabric Selection's Motion for Default Judgment. (Min. Order 1, ECF No. 34.) The Court could not accept the declaration, because a corporation who seeks to appear before a court in the Central District of California must be represented by an attorney licensed to practice in this District. C.D. Cal. L.R. 83-2.2.2. As a result, on January 29, 2018, the Court struck Mr. Kaur's declaration. (Min. Order 1.)

Two weeks later, on February 12, 2018, the Court dismissed Union from the action. (ECF No. 36.) Fabric Selection now asks the Court to find that Manjeet is a willful infringer and enter a default judgment in the amount of $150,000.00. (ECF No. 38.)

### III. LEGAL STANDARD

**A. Default judgment**

Under Federal Rule of Civil Procedure 55(a), the clerk of the court must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After a default has been entered by the clerk of the court, a court may enter a default judgment pursuant to Rule 55(b). Fed. R. Civ. P. 55(b). However, "a defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal 2002).

Before the Court can award a default judgment, the requesting party must satisfy the procedural requirements established under the Local Rules of this district and Rule 55 of the Federal Rules of Civil Procedure. *PepsiCo*, 238 F. Supp. 2d at 1174. Central District of California Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against whom default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, or an incompetent person, or exempt under the Servicemembers' Civil Relief Act; and (4) that the defaulting party was served with notice, if required by Fed. R. Civ. P. 55(b)(2). *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014); C.D. Cal. Local Rule 55-1.

After satisfying the procedural requirements, the decision to grant default judgment is committed to the discretion of the district court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). When moving for default judgment, the well-pleaded factual allegations in the complaint are accepted as true, with the exception that allegations as to the amount of damages must be proved by the plaintiff. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Along with the complaint, the Court looks "to affidavits and declarations to determine whether default judgment is appropriate." *Title Design Collection Inc. v. Ross Stores Inc.*, No. CV 13-8899 GAF

(ASX), 2014 WL 12773909, at *2 (C.D. Cal. June 5, 2014) (citing William W. Schwarzer et al., *California Practice Guide: Federal Civil Procedure Before Trial* § 6:91 (2010)).

In exercising discretion to award a default judgment, courts in the Ninth Circuit consider a number of factors (the "*Eitel* factors"), including (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

**B.  Copyright infringement**

To prove copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  A plaintiff bringing suit under the Copyright Act "may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work."  17 U.S.C. § 504(c)(1).  This election is available to a plaintiff "regardless of the adequacy of the evidence offered as to . . . actual damages or the amount of the defendant's profits." *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1195 (9th Cir. 2001) (quoting Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[A]).

Statutory damages range from $750 to $30,000 per work infringed.  17 U.S.C. § 504(c)(2).  If the copyright holder proves that the infringement was "willful," the Court may, in its discretion, increase statutory damages to up to $150,000 per work. *Id.* Conversely, if an infringer is innocent, the Court may, in its discretion, decrease statutory damages to $200 per work. *Id.* An innocent infringer is one who "was not aware and had no reason to believe that his or her acts constituted an infringement of

copyright." *Id.* The burden of proving innocent infringement falls on the infringer. *See D.C. Comics, Inc. v. Mini Gift Shop*, 912 F.2d 29, 35 (2nd Cir. 1990) (increasing district court's award of statutory damages from $200 to $500 against infringers who were similarly situated to other innocent infringers but who had not themselves appeared in court to prove their innocence). A single statutory award is available for each copyrighted work that has been copied. *See Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 946–47 (9th Cir. 2001) (quoting 18 C.J.S. *Copyright* § 127 (2011)) ("Only a single award of statutory damages within the statutory limits may be made for all infringements involved in the action with respect to any one work . . . .").

"The court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984). In making its determination, the Court is guided by "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (quoting *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232 (1952)). "Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within [the] statutory limits to sanction and vindicate the statutory policy" of discouraging infringement. *Woolworth Co.*, 344 U.S. at 233.

### IV. DISCUSSION

**A. Procedural requirements**

Plaintiff Fabric Selection's Motion satisfies the procedural requirements for default judgment pursuant to Fed. R. Civ. P. 55(a) and Local Rule 55-1. By declaration, Fabric Selection's attorney identified the Complaint and established that the Clerk of the Court entered default against Manjeet on May 1, 2017. (Suppl. Decl. of Stacey Knox ¶¶ 2, 3, ECF No. 41.) The Declaration further confirms that Manjeet, a corporation, is neither an infant nor an incompetent person, nor is it exempt under the

Servicemembers' Civil Relief Act. (*Id.* ¶¶ 4, 5.) Finally, Fabric Selection provided the Court with notice that Manjeet has not appeared in this action, and, as such, written notice of default judgment under Federal Rule of Civil Procedure 55(b)(2), as referenced by Local Rule 55-1(e), is not required. (*Id.* ¶ 6; *see also* ECF No. 38.) Fabric Selection has met the applicable procedural requirements.

**B.** *Eitel* **factors**

In determining if default judgment is appropriate, the Court considers in turn each of the seven factors articulated in *Eitel*, 782 F.2d at 1471–72. The Court finds that, while some of the *Eitel* factors weigh against granting this Motion, a default judgment is, on the balance, appropriate.

*1. Without default judgment, Fabric Selection will suffer prejudice*

The first *Eitel* factor considers the prejudice that would be suffered by Plaintiff if default is not entered. *Eitel*, 782 F.2d at 1471. Denial of default leads to prejudice when it leaves a plaintiff without a remedy or recourse for recovery of compensation. *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010); *PepsiCo*, 238 F. Supp. 2d at 1177. "[P]ast misconduct and current failure to litigate [a] case indicate that [a defendant] is highly unlikely to correct past behavior or otherwise compensate [p]laintiffs without a default judgment by the Court." *Kerr Corp. v. Tri Dental, Inc.*, No. SACV 12-0891 DOC (CWx), 2013 WL 990532, at *3 (C.D. Cal. Mar. 11, 2013).

Manjeet has had sufficient time to appear in this suit, but it has not done so. At this point, it appears that default judgment is the only way for Fabric Selection to receive compensation for Manjeet's shipment of infringing garments. On the whole, the first *Eitel* factor weighs in favor of granting default judgment.

*2. Fabric Selection pleads a sufficient and meritorious copyright infringement claim*

"Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together." *Universal Music-MGB NA*

*LLC v. Quantum Music Works, Inc.*, No. CV 16–3397 FMO (AJWx), 2017 WL 2350936, at *3 (C.D. Cal. May 30, 2017). Together, the two factors "require that a plaintiff state a claim on which [it] may recover." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). To state a claim for copyright infringement, Fabric Selection must demonstrate (1) ownership of a valid copyright and (2) copying of the protected elements of the work. *Feist Publ'ns*, 499 U.S. at 361; *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012).

Fabric Selection has met the first requirement for copyright infringement by demonstrating ownership of a valid copyright in the Subject Design. A copyright registration certificate constitutes *prima facie* evidence of the validity of the copyright and the facts stated on the certificate, including the fact that the plaintiff owns a copyright. *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003); *see* 9th Circuit Model Jury Instruction 17.5. Fabric Selection has presented a Certificate of Registration from the United States Copyright Office demonstrating registration of the Subject Design. (Compl. ¶¶ 9–10, Ex. 2.) Therefore, Fabric Selection has made a *prima facie* showing of ownership. Since Manjeet has not appeared to rebut this showing, the Court concludes that Fabric Selection owns a valid copyright in the Subject Design.

Fabric Selection has also met the second requirement for copyright infringement by demonstrating that Manjeet has copied the protected elements of the Subject Design. Specifically, Fabric Selection alleges copying by asserting that "Defendants have manufactured . . . garments upon which were unauthorized reproductions of the Copyrighted Design." (Compl. ¶ 12.) The Court draws a reasonable inference in favor of Fabric Selection that "manufacturing" as alleged in the Complaint includes actual copying of the Subject Design. The Court therefore finds that the well-pleaded allegations in the Complaint state a claim for copyright infringement.

The Court notes, however, that many of the Complaint's allegations are conclusory assertions that lack a specific factual underpinning. (*See* Compl. ¶¶ 12, 13,

16, 20, 21, 23–26, 29, 30.)  In determining if a complaint states a claim upon which relief can be granted, the Court need not accept as true "conclusory allegations of law and unwarranted inferences." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996.)  For example, Fabric Selection alleges that Manjeet was "willful" in its infringement, while providing no specific facts that show willfulness.  (Compl. ¶¶ 21, 30.)  In ruling on this Motion, the Court disregards such conclusory allegations and instead looks only to the well-pleaded factual allegations in the Complaint, along with affidavits and documentary evidence in the record.  *See Title Design Collection*, 2014 WL 12773909, at *2.

On the balance, the second and third *Eitel* factors support default judgment.

*3. Gaps and inconsistencies in the record present the possibility of disputed material facts*

The next *Eitel* factor considers the possibility of disputed material facts. *PepsiCo*, 238 F. Supp. 2d at 1177.  The possibility of dispute over material facts makes default judgment less appropriate.  *Id.*  Because the general rule is that a defaulting party admits the facts alleged in the complaint to be taken as true, *Televideo*, 826 F.2d at 917–19, this *Eitel* factor often weighs strongly in favor of default judgment.  *See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) ("Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote.").  Here, however, after taking the facts alleged in the Complaint as true, the Court finds that substantial gaps and inconsistencies in the record remain, sustaining the possibility of disputed material facts.

The first gap in the record relates to whether Manjeet indeed copied the Subject Design.  Because copying can be difficult to prove, a plaintiff may prove copying through circumstantial evidence that (1) the defendant had access to the copyrighted work prior to the creation of defendant's work and (2) there is substantial similarity between the copyrighted work and the defendant's work.  *See Unicolors, Inc. v. Urban Outfitters*, 853 F.3d 980, 984–85 (9th Cir. 2017).

To show copying, Fabric Selection alleges, and the Court agrees, that Manjeet had access to the Subject Design, and that the Subject Design and the design on Manjeet's skirts are substantially similar. (Mot. 16–18.) However, in this particular case, these two allegations, without more, leave doubts about the validity of Fabric Selection's claim for copyright infringement. This is because Union ordered several thousand yards of fabric from Fabric Selection in December 2015. (Javaheri Decl. ¶ 7.) Nowhere in Fabric Selection's filings is it affirmatively alleged that the skirts that Manjeet manufactured were *not* made from the same physical shipment of fabric that Fabric Selection sold to Union. Without proof that Manjeet actually printed the Subject Design onto its own fabric, the Court would be unable to rule out the possibility that no copying took place and that instead Manjeet simply received physical fabric from Union and used that fabric to manufacture the skirts.

The Court determines that Manjeet actually printed the Subject Design onto its own fabric by looking to the affidavits and documentary evidence on file. *See Title Design Collection*, 2014 WL 12773909, at *2. The Purchase Order, Packing List, and Invoice for the contested shipment, dated between January and March 2016, all indicate that the skirts were "PRINTED."[2] (Knox Decl. Ex. A at 31–33.) From these documents, the Court concludes that Manjeet printed its own version of—that is, it copied—the Subject Design.

Even so, doubts remain about whether Manjeet might have had authorization to print fabric or manufacture garments bearing the Subject Design. Union asserted in its responses to Fabric Selection's Requests for Admission that it, Union, was authorized by Fabric Selection to (1) use the Subject Design on some products, and (2) sell products bearing the Subject Design. (Knox Decl. Ex. B at 46.) If this authorization extended to Manjeet's manufacturing activities, Manjeet could have a defense to copyright infringement. *See Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984)

---

[2] The Court considers any evidentiary objections to the Purchase Order, Packing List, and Invoice to be waived by Manjeet's non-appearance.

("[A]nyone who is authorized by the copyright owner to use the copyrighted work in a way specified in the statute . . . is not an infringer of the copyright with respect to such use."). The scope of this authorization is therefore a potentially disputed material fact in this case.

Another problematic inconsistency in the record concerns when Union first obtained the Subject Design. Fabric Selection says that it shipped Union several thousand yards of fabric containing the Subject Design in late 2015. (Javaheri Decl. 25.) Union, for its part, says that it "obtained the Subject Design on or about March 30, 2016, when the garments bearing it arrived at [Union's] warehouse from defendant MANJEET . . . ." (Knox Decl. Ex. B at 8.) These two allegations cannot both be true; either Union first obtained the Subject Design in late 2015 when it received fabric from Fabric Selection, or Union first obtained the Subject Design in March 2016 when it received the shipment of skirts from Manjeet.

To resolve this contradiction, the Court considers how the Subject Design came to be in Manjeet's possession. Taking Union's version of the story at face value would require believing that that in early 2016, Manjeet, a manufacturer in India, happened to (1) select the very same design that Fabric Selection had separately sent Union two months prior, (2) manufacture two thousand skirts, and (3) ship them all to Union, who did not request the shipment but who nevertheless accepted it without complaint. Such a scenario is beyond credible. Instead, the natural conclusion matches what Manjeet's representative explained to counsel for Fabric Selection and provides meaning to the purchase orders and invoices in the record; namely, that Union sent the Subject Design to Manjeet with a request to manufacture 2,004 skirts, and Manjeet then filled and shipped the order as requested. (Knox Decl. ¶ 4.)

This conclusion is bolstered by a May 2016 chain of emails between representatives of Union and Manjeet that were sent approximately two months after

the contested shipment.³ (Knox Decl. Ex. A at 33–35.) In the emails, Union's representative uses phrases such as "We ordered," "We approved," and "Our P[urchase ]O[rder]," all of which directly contradict Union's assertions that it was unaware of the order and that it did not "obtain" the Subject Design until Manjeet's shipment arrived at its facility. (Knox. Decl. Ex. A at 34, Ex. B at 38, 41.) These observations lead most naturally to the conclusion that the party that caused the infringing skirts to be manufactured was Union, not Manjeet.

Another material inconsistency relates to how Fabric Selection discovered the infringing goods. Fabric Selection asserts that it "located . . . infringing goods that had been distributed by Union," whereas Union asserts that it "had not sold any units of SUBJECT PRODUCT" and that it still had all "2,004 units of Subject Product in its possession, custody, or control." (Knox Decl. ¶ 2, Ex. B at 38, 40.) It remains unexplained how Fabric Selection was able to discover the infringing skirts and ascertain that the skirts violated its copyright if the infringing goods remained in Union's possession, custody, or control.

In sum, the record contains substantial inconsistencies that Fabric Selection, as the party seeking maximum statutory damages, has made no effort to resolve. These inconsistencies relate to important factual matters, including the willfulness of Manjeet's infringement, and they thus present a substantial possibility of dispute as to material facts in this case. *Eitel*, 782 F.2d at 1471–72. Thus, this factor weighs against granting default judgment.

### 4. *The sum of money awarded to Fabric Selection weighs in favor of default judgment*

The fourth *Eitel* factor balances the sum of money at stake with the "seriousness of the action." *Lehman Bros. Holdings Inc. v. Bayporte Enters., Inc.*, No. C 11–0961–CW (MEJ), 2011 WL 6141079, at *7 (N.D. Cal. Oct. 7, 2011). The amount at stake

---

³ The Court considers any evidentiary objection to this email chain to be waived by Manjeet's non-appearance.

must not be disproportionate to the harm alleged. *Id.* Default judgments are disfavored where the sum of money requested is too large or unreasonable in relation to a defendant's conduct. *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

Although Fabric Selection asks for $150,000.00 in statutory damages, the Court awards it only $750.00. Therefore, this factor presents no barrier to default judgment in this case.

### 5. *The remaining* Eitel *factors support default judgment*

The remaining two *Eitel* factors support granting default judgment. Manjeet has been served with multiple notices of Fabric Selection's prosecution of this suit, and Manjeet's failure to defend can no longer be described as excusable neglect. (*See* ECF Nos. 10, 24.) Finally, although the Federal Rules of Civil Procedure favor decisions on the merits, when a defendant such as Manjeet has failed to appear, "a decision on the merits [is] impractical, if not impossible," and default judgment is warranted. *PepsiCo*, 238 F. Supp. 2d at 1177.

For these reasons, the Court finds that, on the balance, the *Eitel* factors favor granting a default judgment against Manjeet.

## C. Remedies

Fabric Selection requests statutory damages, costs, and attorney's fees. (Mot. ¶¶ 9–11.) The Court will address each request in turn.

### 1. *Statutory damages*

Because Manjeet has not appeared to argue that its infringement was innocent, the Court can award no less than $750.00 in statutory damages. *See* 17 U.S.C. § 504(c)(1). Conversely, because the Court finds that Manjeet is not a willful infringer, the Court may not grant statutory damages in excess of $30,000.00. *See id.* Given the inconsistencies in the record discussed in Section IV.B.3, *supra*, as well as the paucity of evidence as to Manjeet's culpability, discussed below, the Court is unwilling to award Fabric Selection any more than the minimum statutory damages imposed on non-

innocent infringers. The Court therefore awards Fabric Selection statutory damages in the amount of $750.00.

The Court's decision is based on the most natural reading of the record. Union, an importer and distributor, purchased fabric containing the Subject Design from Fabric Selection. Union sent the Subject Design to Manjeet and asked Manjeet to manufacture 2,004 skirts containing the Subject Design. Manjeet filled the order as requested, and Fabric Selection thereupon asserts that Manjeet is a willful infringer. (Mot. 20–21.)

To prove willfulness, a plaintiff must show "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's right." *Louis Vuitton*, 658 F.3d at 944. Viewing the record as a whole, the Court is unwilling to conclude that Manjeet was actually aware that its shipment of skirts infringed any copyright. After all, the party that initially acquired the pattern from Fabric Selection was Union, not Manjeet, and thus it was Union who was uniquely positioned to know that the Subject Design was copyrighted. (*See* Javaheri Decl. ¶ 7.)

Nor is there any indication that the pattern Manjeet used contained any indication that it was copyrighted. In cases where a work bears particularly obvious notice of its copyright, an award of maximum statutory damages is within a court's discretion. *See Warner Bros. Entm't, Inc. v. Caridi*, 349 F. Supp. 2d 1068, 1074 (C.D. Cal. 2004) (finding willful infringement and imposing maximum statutory damages against a defendant who copied and distributed "screener" DVDs, when the DVDs were replete with notices that put the viewer on clear notice of the relevant copyright). The Court finds no evidence that any such notice accompanied the Subject Design.

Finally, the Court cannot agree with Fabric Selection when it asserts that Manjeet was "reckless" and "grossly negligent" in its failure to "take reasonable steps to avoid infringement when it is recreating artwork," analogizing to *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980 (9th Cir. 2017). (Mot. 21.) That case is inapposite because Manjeet and the *Unicolors* defendant occupy different positions in the supply

15

chain. The latter was a retail clothing company who collected and maintained a large catalog of fabric designs and who made little to no effort to "investigate or attempt to determine whether [the] designs [were] subject to copyright protections." *Unicolors*, 853 F.3d at 992. Here, Manjeet is not a designer who collects fabric swatches; it is an overseas clothing manufacturer who takes orders from importers such as Union. (Javaheri Decl. ¶ 5.) Because Manjeet is not the party collecting the fabric designs, Manjeet is not in a position to investigate the copyright associated with its orders, as the *Unicolors* defendant was. The Court therefore concludes that Manjeet is not a willful infringer.

Because Manjeet is a non-willful infringer who has not appeared, the minima and maxima governing statutory damages in this case are $750.00 and $30,000.00, respectively. *See Harris*, 734 F.2d at 1335; *D.C. Comics*, 912 F.2d at 35. Consistent with the above discussion, the Court finds a statutory award of $750.00 to be appropriate.

This award constitutes approximately 6.5% of $11,523.00, the latter being the total amount charged for the contested shipment. (Knox Decl. Ex. A at 33.) The amount charged for a shipment of infringing goods is a "circumstance[] of the infringement" that may be considered when awarding statutory damages. *Pausa Records*, 909 F.2d at 1336. Moreover, many districts specify that disgorgement of the infringer's profits is a valid goal for an award of statutory damages. *See Dream Dealers Music v. Parker*, 924 F. Supp. 1146, 1153 (S.D. Ala. 1996); *Sailor Music v. IML Corp*, 867 F. Supp. 565, 570 (E.D. Mich. 1994); *W.B. Music Corp. v. Symetry Enters., LLC*, No. 3:06cv01214 (MRK)(WIG), 2007 WL 2126361, at *2 (D. Conn. June 26, 2007). In any event, the Court is satisfied that an award of 6.5% of the Invoice total is sufficient, both to disgorge Manjeet of any profit margin generated by these infringing goods and to deter Manjeet and other clothing manufacturers from similar infringements.

*2. Costs and attorneys' fees*

Fabric Selection asks the Court to award its costs and attorneys' fees associated with this Motion. (Mot. ¶¶ 10–11.) In a copyright action, the Court exercises its discretion to award attorneys' fees by weighing factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S.Ct. 1979, 1985 (2016). In light of the above discussion, the Court finds that an award of $750.00 in statutory damages is sufficient to effectuate the purposes of the copyright laws in this controversy, and therefore declines to award Fabric Selection costs and attorneys' fees.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Default Judgment and awards statutory damages in the amount of $750.00, and the Court **DENIES** Plaintiff's motion for costs and attorney's fees. (ECF No. 33.) The Court will issue a judgment.

**IT IS SO ORDERED.**

April 16, 2018

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**